Argued and submitted September 23, 2021; decision of Court of Appeals reversed in part, and case remanded to Court of Appeals for further proceedings March 22, 2022

STATE OF OREGON,
*Respondent on Review,*

*v.*

ERIK JOHN MEISER,
*Petitioner on Review.*

(CC CR1201547) (CA A166534) (SC S068327)

506 P3d 402

Defendant, who had been diagnosed with schizophrenia and antisocial personality disorder, asserted a defense of guilty except for insanity (GEI) to murder and other charges. The trial court, sitting as factfinder, rejected defendant's GEI defense as to the murder charge, and the Court of Appeals affirmed, reasoning that the evidence permitted a finding that defendant's asserted incapacity was at least partly a result of his antisocial personality disorder, and not the result of his schizophrenia alone. *Held*: ORS 161.295 provides that a co-occurring disorder that is solely a personality disorder is excluded from the "mental disease or defect" that forms the basis for a GEI defense, but the statute does not require a defendant asserting the GEI defense to prove that a co-occurring personality disorder played no causal role in bringing about the requisite lack of substantial capacity.

The decision of the Court of Appeals is reversed in part, and the case is remanded to the Court of Appeals for further proceedings.

On review from the Court of Appeals.*

Daniel J. Casey, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Leigh A. Salmon, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Thomas Stenson, Disability Rights Oregon, Portland, filed the briefs on behalf of *amicus curiae* Disability Rights Oregon.

_____

* Appeal from Clackamas County Circuit Court, Katherine E. Weber, Judge. 308 Or App 570, 481 P3d 375 (2021).

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices.**

FLYNN, J.

The decision of the Court of Appeals is reversed in part, and the case is remanded to the Court of Appeals for further proceedings.

––––––––––––––

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case. DeHoog, J., did not participate in the consideration or decision of this case.

**FLYNN, J.**

Defendant, who has been diagnosed with schizophrenia and a co-occurring antisocial personality disorder, contends that the trial court and the Court of Appeals erred in its understanding of the evidence required to establish that he was guilty except for insanity (GEI) with respect to charges of murder. GEI is an affirmative defense that requires proof that, "as a result of mental disease or defect," the defendant "lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." ORS 161.295(1) (2011), *amended by* Or Laws 2017, ch 634, § 3.[1] But "the terms 'mental disease or defect' do not include *** any abnormality constituting solely a personality disorder." ORS 161.295(2). The parties agree that schizophrenia is a "mental disease or defect" within the meaning of ORS 161.295, and they agree that defendant's co-occurring antisocial personality disorder is a "personality disorder" within the meaning of the statute. But they disagree about whether ORS 161.295 requires proof that defendant experienced the requisite incapacity *solely* "as a result of" his schizophrenia, and not in any part as a result of his co-occurring antisocial personality disorder. As explained below, we conclude that the legislature intended to specify that a co-occurring disorder that is solely a personality disorder is excluded from the "mental disease or defect" that forms the basis for a GEI defense, but the legislature did not intend to require proof that a co-occurring personality disorder played no causal role in bringing about the requisite lack of substantial capacity. That conclusion resolves the issue on which we allowed review, but it leaves unresolved additional legal and factual questions

---

[1] The 2011 version of the statute applies in defendant's case, and we cite that statute without reference to a year in the remainder of this opinion. The legislature amended ORS 161.295 in 2017 by replacing the term "mental disease or defect" with the term "qualifying mental disorder." Or Laws 2017, ch 634, § 3. The preamble to the 2017 amendments indicates that the legislation intended to replace the term "mental disease or defect," which "may carry a negative connotation," with an updated term, "while preserving the validity of all previous court decisions interpreting" the prior wording and "without making a substantive change to Oregon law." *Id.*, preamble. Although we are mindful of the negative connotations of the term "mental disease or defect," it is the applicable statutory term in this case, and, because it would be confusing to do otherwise, we use it throughout this opinion.

regarding defendant's proof of causation and incapacity. We remand the case to the Court of Appeals to address those questions.

## I.  BACKGROUND

Defendant, who has been diagnosed with schizophrenia and antisocial personality disorder, killed FH during a home-invasion robbery. At the time, defendant was suffering from multiple delusions, including the belief that his children were in danger because "poorer people were being harvested." Defendant believed that the only way to protect his children was to own property, and he set out to steal $40,000 for a down payment on a "condo." Defendant first broke into a martial arts studio, looking for a person whom he believed might be a source of money. No one was in the building, but defendant found and stole a samurai sword.

After stealing the sword, defendant decided to rob FH and his wife. Defendant later told a detective that he targeted FH and his wife because voices—"these people who follow me constantly"—told him that "the only way" he would "ever get any money is through this course of action." Defendant waited until he saw FH and his wife leave their house and then entered it to wait for them to return. His plan was to have "a discussion about the ailments of society" and then have them transfer $40,000 to defendant. He did not plan to harm anyone, but he took a machete from the victims' workbench to intimidate them. When the victims returned home and found defendant, both victims panicked and ran outside. Defendant pursued FH and struck him multiple times in the head with the machete. Defendant then changed clothes nearby, discarded his bloody jeans, and entered the garage of another residence to steal a bicycle to help him escape.

The state charged defendant with multiple counts of aggravated murder, robbery, and burglary related to the invasion of FH's home, as well as with second-degree burglary counts related to the samurai sword and the bicycle. Defendant was repeatedly found to lack the capacity to stand trial. He spent nearly four years confined at the Oregon

State Hospital before ultimately being found competent to stand trial. Defendant did not dispute that he had committed the criminal acts for which he had been charged, but he asserted the affirmative defense of GEI to all of the charges. *See* ORS 161.295 (setting out the GEI defense); ORS 161.305 (2011), *amended by* Or Laws 2017, ch 634, § 5 (specifying that "[m]ental disease or defect constituting insanity under ORS 161.295 is an affirmative defense"). As defined by the legislature, that defense required defendant to prove that, "as a result of mental disease or defect at the time of engaging in criminal conduct," he "lack[ed] substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." ORS 161.295(1). But the legislature also specified that "the terms 'mental disease or defect' do not include *** any abnormality constituting solely a personality disorder." ORS 161.295(2).

Defendant waived his right to trial by jury and tried his case to the court. He offered the testimony of a psychologist and three psychiatrists, all of whom opined that defendant was suffering from schizophrenia but recognized that he had a co-occurring diagnosis of antisocial personality disorder. One of the psychiatrists explained that, as a symptom of defendant's schizophrenia, defendant experienced "command auditory hallucinations"—voices that defendant believed to be telepathic communications from unseen entities—although defendant did not experience "the kind of overwhelming command auditory hallucinations some other psychotic individuals have."

Two of the experts addressed the other elements of the GEI defense. Both testified that, at the time of the crimes, defendant lacked substantial capacity to conform his conduct to the requirements of the law. And both testified that, if not for the psychosis, defendant would not have committed the crimes. One of the experts specifically rejected the suggestion that defendant's "conduct [was] a result of antisocial personality disorder rather than schizophrenia." The other opined that both of defendant's conditions were "active" at the time of the murder but that defendant's psychosis associated with his schizophrenia "was more the predominant driver of his behaviors."

The state offered no contrary expert testimony, but it argued that the expert testimony failed to establish the elements of defendant's GEI defense. With respect to causation, the state disputed both the sufficiency of defendant's evidence and the applicable legal test. The state did not dispute that schizophrenia is a "mental disease or defect," but it argued that defendant was required to prove that the requisite incapacity "resulted from [that] mental disease [or defect] and nothing else" and that, unless the court found that incapacity resulted "from solely a mental disease [or defect], the Court may not find the defendant guilty except insane." The state insisted that defendant could not prove the causation element of his GEI claim. It first argued that defendant's "choices" were not solely the result of his schizophrenia, but "were at least, if not substantially, influenced by his anti-social personality disorder." Second, the state argued that the court could find that "neither" condition led to defendant's conduct.

At the conclusion of the trial, the court found that defendant was guilty except for insanity with respect to the charges of burglary and robbery of FH's home and with respect to the earlier burglary of the martial arts studio. But the court found that defendant had not proven the GEI defense with respect to the murder of FH and the subsequent burglary of the garage. As to that conduct, the court found defendant guilty of murder, as the lesser-included offense of aggravated murder, and of second-degree burglary. The court rendered its verdicts without explaining whether it had agreed with the state's proposal that "as a result of mental disease or defect" required defendant to prove that any incapacity was solely the result of his schizophrenia and without identifying the element or elements of the GEI defense that defendant failed to prove with respect to the murder and final burglary charges.[2]

---

[2] On appeal, defendant assigned error to the trial court's denial of his verbal request, made after the court announced its verdicts, that the court make "findings of fact and conclusions of law." The Court of Appeals rejected that assignment of error, reasoning that "defendant's generalized request did not trigger the trial court's obligation to address the elements of the GEI defense." *State v. Meiser*, 308 Or App 570, 591, 481 P3d 375 (2021) (internal quotation marks omitted). Defendant does not reprise the issue before this court.

Defendant appealed his convictions to the Court of Appeals and assigned error to, among other rulings, the trial court's rejection of the GEI defense to the murder charge.[3] With respect to the GEI defense, defendant insisted that the state had proposed an incorrect legal test when it argued that defendant was required to prove that his incapacity resulted "solely" from defendant's schizophrenia. Although the trial court had not specified whether it accepted the state's test, defendant urged the Court of Appeals to conclude that the trial court had accepted the state's understanding that "as a result of" in ORS 161.295(1) means "solely" as a result of. Under the correct causation test, defendant contended, no reasonable factfinder could fail to find that defendant had proven the elements of his GEI defense.

The Court of Appeals affirmed. *State v. Meiser*, 308 Or App 570, 481 P3d 375 (2021). Because the trial court had not identified the element or elements that, in its assessment, defendant had failed to prove, the Court of Appeals reasoned that defendant could establish error only if he established that he was entitled to prevail as a matter of law on each element of the defense. *Id.* at 578. The court observed that there was no dispute on appeal that defendant had established the first element of the GEI defense: that his schizophrenia qualified as a "mental disease or defect" under the statute. *Id.* But the court concluded that defendant had not established that he was entitled to prevail as a matter of law on the causation element. *Id.* at 586. The court understood one of its own prior decisions to preclude defendant's understanding of the causation element. *Id.* at 581-82 (citing *State v. Peverieri*, 192 Or App 229, 232-33, 84 P3d 1125, *rev den*, 337 Or 248 (2004)).[4] In this case, the court observed that defendant had not developed an argument for overruling *Peverieri* and, thus, accepted the state's proposition "that the requisite incapacity must result from

---

[3] Defendant did not challenge the trial court's rejection of his GEI defense on the second-degree burglary charge.

[4] In *Peverieri*, the court held that the GEI defense was not available to a defendant who suffered from chronic liver failure because—even assuming the liver condition produced a qualifying "mental disease or defect"—the defendant's state at the time of the criminal activity "was a result of the mental disease or defect *and* voluntary intoxication." 192 Or App at 233 (emphasis in original).

a qualifying mental disease or defect itself, not from a combination of qualifying and nonqualifying impairments." *Meiser*, 308 Or App at 577, 581-82.

Under that test, the court concluded, the evidence permitted the trial court to find that defendant had not proven causation. *Id.* at 585-86. The court reasoned that "the evidence permitted the factfinder to conclude, at the least, that defendant's schizophrenia and antisocial personality disorder were both active impairments" and that "[h]is compromised capacity could be found[] not to be *the* result of a mental disease or defect." *Id.* (emphasis in original). The Court of Appeals then discussed the parties' competing arguments regarding whether the evidence required the trial court to find that defendant had been experiencing either form of substantial incapacity at the time of the criminal activity, but the court ultimately observed that it was "unnecessary to resolve" those arguments in light of its conclusion that the trial court was permitted to find "that defendant's asserted incapacity, in whatever form, is not the result of a mental disease or defect." *Id.* at 586-88.

## II.   DISCUSSION

To prove the statutory defense of GEI, three elements must exist "at the time of engaging in criminal conduct": "mental disease or defect"; lack of "substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law"; and a causal link between the two. ORS 161.295(1). As explained above, the ultimate dispute between the parties on appeal is whether the evidence at trial established all three elements as a matter of law. We allowed review to address one piece of that dispute, which was dispositive in the Court of Appeals: whether defendant was required to prove that his asserted lack of capacity was solely the result of his schizophrenia and in no part the result of his antisocial personality disorder.[5]

---

[5] The state contends that we should not reach the question on which we allowed review and should instead affirm based on defendant's failure to challenge what the state perceives to be an "alternative holding" in the opinion of the Court of Appeals. But we do not read that opinion as announcing the "alternative holding" that the state identifies, and we reach the issue on which we allowed review.

We conclude that the legislature did not intend to require proof that a personality disorder played no role in bringing about the requisite lack of capacity, and, ultimately, we remand to the Court of Appeals for further consideration.

## A.  *Causation Analysis Under ORS 161.295*

Because the elements of the GEI defense are established by statute, the question is what causal connection the legislature intended to require. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (emphasizing that, in determining the meaning of a statute, the court's "paramount goal" is to discern the intent of the legislature). All requirements for the GEI defense are contained in ORS 161.295, which, as applicable to defendant's case, provided:

> "(1)  A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.
>
> "(2)  As used in chapter 743, Oregon Laws 1971,[6] the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

As with all questions of statutory construction, we turn to the analytical framework that we described in *Gaines* to determine whether the legislature intended to require proof that a defendant lacked capacity *solely* "as a result of mental disease or defect" and in no part as a result of a "personality disorder." *See* ORS 161.295. Under that well-established framework, we consider the text and context of the statute, and we consider legislative history "where that legislative history appears useful to the court's analysis." *Gaines*, 346 Or at 171-72. In this case, the legislative history is particularly helpful to our understanding of what the legislature intended.

---

[6] The reference in ORS 161.295(2) to "chapter 743, Oregon Laws 1971" is a reference to the comprehensive Oregon Criminal Code adopted in 1971, of which the GEI defense was a part. *See* Or Laws 1971, ch 743, § 36.

The text that governs defendant's case is the product of two different legislative enactments. The relevant causation test—"as a result of mental disease or defect at the time of engaging in criminal conduct"—dates to when the statute was originally enacted as part of the comprehensive Oregon Criminal Code of 1971. Or Laws 1971, ch 743, § 36. As originally enacted, however, the statute specified just one exclusion from the terms "mental disease or defect," for "an abnormality manifested only by repeated criminal or otherwise antisocial conduct." *Id.* The exclusion of "any abnormality constituting solely a personality disorder" from what qualifies as "mental disease or defect" was added to ORS 161.295(2) in 1983, through the adoption of House Bill (HB) 2075. Or Laws 1983, ch 800, § 1. Thus, our inquiry into legislative intent takes into account both the 1971 and the 1983 legislatures. *See State v. Swanson*, 351 Or 286, 290, 266 P3d 45 (2011) (explaining that the proper inquiry for statutory construction focuses on "the intent of the legislature that enacted the statute," although "we also consider any later amendments or statutory changes that were intended by the legislature to modify or otherwise alter the meaning of the original terms of the statute").

Both parties point us to legislative history indicating that the 1983 Legislative Assembly enacted the personality disorder exclusion in ORS 161.295(2) to narrow the availability of the insanity defense. Significantly, however, the legislative history suggests that the legislature did not intend to narrow availability of the defense so thoroughly that a defendant's proof would fail if a personality disorder contributed in any part to the qualifying incapacity. This court has previously recited that legislative history in detail. *Tharp v. PSRB*, 338 Or 413, 426-30, 110 P3d 103 (2005) (quoting *Beiswenger v. PSRB*, 192 Or App 38, 48-51, 84 P3d 180, *rev dismissed*, 337 Or 669 (2004)).[7] Here, we rely on that prior recitation where pertinent.

_____

[7] In *Tharp*, this court set out at length and relied upon a "detailed review of the legislative history leading to the legislature's decision to exclude personality disorders from the definition of mental disease or defect in ORS 161.295" from a recent Court of Appeals "opinion by [then-]Judge Landau." 338 Or at 426 (discussing *Beiswenger*, 192 Or App at 48-51). We provide citations to the legislative history that is quoted in *Tharp* without further reference to *Beiswenger*.

As that recitation of the legislative history explains, the bill as originally introduced did not address "personality disorders." *Tharp*, 338 Or at 426. That changed after an early hearing, at which the Executive Director of the Psychiatric Security Review Board suggested that the legislature should explicitly addresse whether the definition of "mental disease or defect" included or excluded "personality disorders" and the chair of the board testified that "the board supported the exclusion of 'personality disorders' from the definition of 'mental disease or defect.'"[8] *Tharp*, 338 Or at 426-27.

At a subsequent hearing, Representative Peter Courtney asked for an amendment "that would accomplish the exclusion of 'personality disorders' from the statutory definition of 'mental disease or defect,'" and "Jeffrey Rogers, the chair of the legislative interim task force that had drafted the bill, *** responded with the wording that is, in substance, the current law." *Tharp*, 338 Or at 427-28. Specifically, Rogers proposed that the legislature add the phrase "nor does [the term 'mental disease or defect'] include disorders characterized only as personality disorders." Tape Recording, House Committee on Judiciary, HB 2075, May 13, 1983, Tape 324, Side A (statement of Jeffrey Rogers). He emphasized that the exclusion should include the word "only"—which became "solely" in the enacted provision—to indicate that a person who has "a personality disorder plus a psychosis *** may still qualify." *Id.* At the suggestion of legislative counsel, Rogers's proposal to exclude "disorders characterized only as personality disorders," *see id.*, became an exclusion of "any abnormality constituting solely a personality disorder," Exhibit V, House Committee on Judiciary, May 31, 1983, HB 2075 (accompanying statement of Legal Counsel Linda Zuckerman). But legislative counsel told the committee that the change was not substantive—that the

---

[8] The scope of "mental disease or defect" also is at issue in cases in which a petitioner who has proven a GEI defense later seeks discharge from commitment or from the Psychiatric Security Review Board's jurisdiction on the ground that the person is "'no longer affected by mental disease or defect.'" *See, e.g.*, *Tharp*, 338 Or at 416-18, 416 n 1 (discussing the versions of ORS 161.341(4) and ORS 161.351 then in effect and explaining that the petitioner challenged the board's conclusion that he was not entitled to discharge because, on account of his substance dependency, he continued to be affected by a "mental disease or defect").

exclusion was still "to the effect that the mental disease or defect also does not include disorders characterized only as personality disorders." Tape Recording, House Committee on Judiciary, May 31, 1983, HB 2075, Tape 386, Side A (statement of Legal Counsel Linda Zuckerman).

Subsequently, "[t]he bill moved to the floor of the House, where the floor manager, Representative Courtney, explained that it contained a 'personality exclusion' that accomplished a narrowing of the definition of 'mental disease or defect.'" *Tharp*, 338 Or at 428. To further explain the exclusion, Representative Courtney quoted from a letter that the board's executive director had submitted to the House Judiciary Committee:

> "'Right now if a person has what is considered a personality disorder, *** they're able to claim that they have a mental disease or defect. We now no longer, with this piece of legislation, will allow an individual to say that I have a mental disease or defect because I have a personality disorder.'"

*Id.* (quoting Audio Recording, House Floor Debate, HB 2075, June 16, 1983, Reel 19, Track I (statement of Rep Peter Courtney)). The bill passed the House. *Id.* at 429.

When the bill moved to the Senate, Representative Courtney introduced it to the Senate Judiciary Committee by "explain[ing] that it 'would remove personality disorders as a category that could be relied on for use of the insanity plea.'" *Id.* (quoting Tape Recording, Senate Committee on Judiciary, HB 2075, June 29, 1983, Tape 234, Side A (statement of Rep Peter Courtney)). Ultimately, both houses passed the bill, and it was signed into law. *Id.*

The text of the 1983 amendment captures the legislative intent to narrow the definition of a "mental disease or defect" to exclude personality disorders—as the chair of the Psychiatric Security Review Board requested, and as legislators reiterated as the bill moved through the legislature. By specifying in ORS 161.295(2) that "the terms 'mental disease or defect' do not include *** any abnormality constituting solely a personality disorder," the legislature expressed its intention to remove the category of "disorders characterized only as personality disorders" from the larger

group of "mental disease or defect" that can "be relied on for use of the insanity plea" under ORS 161.295(1).[9] *See* Tape Recording, House Committee on Judiciary, HB 2075, May 13, 1983, Tape 324, Side A (statement of Jeffrey Rogers) (proposing wording); Tape Recording, Senate Committee on Judiciary, HB 2075, June 29, 1983, Tape 234, Side A (statement of Rep Peter Courtney) (explaining effect of the bill); *see also Webster's Third New Int'l Dictionary* 1143 (unabridged ed 2002) (defining "include" to mean "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate"). Accordingly, the effect of the 1983 amendment addressing personality disorders is to place a limitation on the "mental disease or defect" element of the defense set out in ORS 161.295(1).

Significantly, however, the 1983 text did not add a similar limitation to the causation element set out in ORS 161.295(1). That is to say, it did not affirmatively require defendants with a personality disorder and a co-occurring condition that *is* a qualifying "mental disease or defect" to prove that their incapacity existed *solely* "as a result of mental disease or defect" and in no part as a result of a personality disorder. And reading in that more extensive limitation would be in tension with the 1983 legislature's intent that a person who has "a personality disorder plus a psychosis *** may still qualify" for the defense. *See* Tape Recording, House Committee on Judiciary, HB 2075, May 13, 1983, Tape 324, Side A (statement of Jeffrey Rogers).

By addressing personality disorders only through an exclusion in ORS 161.295(2), the legislature left unchanged the meaning of "as a result of mental disease or defect" in the affirmative defense set out in 1971. And nothing about the text or legislative history of that 1971 enactment persuades us that the legislature intended "as a result of mental disease or defect" to mean *solely* "as result of mental disease or defect." In ordinary usage, the term "result" is not

---

[9] Given the text and legislative history, we reject an argument advanced by *amicus* Disability Rights Oregon that "abnormality" refers to a defendant's mental state as a whole—meaning that personality disorders are included within the broad category "mental disease or defect," for purposes of proving the GEI defense, as long as the defendant has some other mental disorder or condition. We reject that interpretation as contrary to what the legislature intended.

limited to the concept of sole causation. *See Webster's* at 1937 (defining noun "result," most pertinently, as "something that results as a consequence, effect, issue, or conclusion").

The legislative history of ORS 161.295 also suggests that the 1971 legislature did not intend the "as a result of" standard to be limited to a *solely* "as a result of" standard. Like those who drafted and adopted the 1983 amendment, those who drafted and adopted the 1971 statute were concerned that the defense might be used by a category of offenders whom the drafters did not view as possessing "a mental disease or defect." In 1971, the category of concern was "psychopaths" (or "sociopaths"), and the statute addressed that concern by specifying that "the terms 'mental disease or defect' do not include an abnormality manifested *only* by repeated criminal or otherwise antisocial conduct." Or Laws 1971, ch 734, § 36 (emphasis added); *see* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 36, 35 (July 1970) (discussing concerns regarding "psychopaths"). The drafters of the provision told the 1971 legislature that the purpose of the exclusion was to prevent "recidivists" from "qualify-[ing] for the defense merely by being labeled psychopaths." Commentary § 36 at 35. By structuring the statute to exclude those who were "merely" labeled as "psychopaths," *see id.* (or those demonstrating "an abnormality manifested *only* by repeated criminal or otherwise antisocial conduct," *see* Or Laws 1971, ch 734, § 36(2) (emphasis added)), the legislature left open the possibility that the defense could be available to offenders who suffered from a "mental disease or defect" in addition to whatever label attached to their repeated criminal or antisocial conduct. And we understand the legislature to have intentionally struck that balance.

We understand the 1983 legislature to have intended to retain that balanced approach when it amended subsection (2) to also exclude "personality disorders" from the definition of "mental disease or defect." That exclusion—like the original exclusion—specifies certain mental conditions that are not included within the broader terms "mental disease or defect," and in doing so, narrows access to the defense set out in subsection (1). But it does not make the defense so narrow as to require that a person who can demonstrate the

requisite lack of substantial capacity "as a result of mental disease or defect" also prove that a co-occurring personality disorder in no part contributed to the incapacity. Thus, we agree with defendant that the Court of Appeals erred in concluding that defendant could prevail on his GEI defense only if he proved that his co-occurring personality disorder played *no* part in causing the requisite lack of substantial capacity.

### B. *Proper Disposition*

That conclusion answers the question that this court allowed review to address, but it does not fully resolve whether defendant was entitled to prevail on his GEI defense. As explained above, because the Court of Appeals concluded that defendant was not entitled to prevail on the causation element of the defense, it did not resolve whether the evidence compelled a finding in defendant's favor on the third element of the defense: whether, under ORS 161.295(1), he lacked "substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." *Meiser*, 308 Or App at 588. In addition, the Court of Appeals did not consider—except under the "sole cause" test that we have rejected—whether the evidence compelled a finding that defendant proved that he had experienced any qualifying incapacity "as a result of mental disease or defect." As the state emphasizes, any answer to the latter question may turn on whether the phrase "as a result of" in ORS 161.295(1) means that the qualifying "mental disease or defect" must be sufficient, on its own, to bring about the requisite incapacity, or whether the legislature intended to require some lesser degree of causal contribution from the qualifying "mental disease or defect."[10]

As a matter of judicial efficiency, this court sometimes resolves issues beyond those as to which we allowed review, rather than remanding to the Court of Appeals to resolve remaining issues, but we decline to do so in this case.

---

[10] In its *amicus curiae* brief, Disability Rights Oregon argues that the statute requires but-for causation: But for the "mental disease or defect," the incapacity would not have occurred. *See* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 41, 266 (5th ed 1984) (defining the but-for rule of causation in the tort context). Defendant expresses no opinion on that argument.

Both the remaining evidentiary issues and the remaining statutory construction issue would benefit from consideration in the first instance by the Court of Appeals.

The decision of the Court of Appeals is reversed in part, and the case is remanded to the Court of Appeals for further proceedings.