No. 479 July 10, 2024 667

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMY LYNN SMITH,
*Defendant-Appellant.*

Klamath County Circuit Court
21CR59631, 21CR60063; A179590 (Control), A179591

Alycia E. Kersey, Judge. (Case No. 21CR59631, Judgment entered August 25, 2022)

Kelly N. Kritzer, Judge. (Case No. 21CR60063, Judgment entered August 25, 2022)

Submitted May 31, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sara F. Werboff, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Joyce, Presiding Judge, Lagesen, Chief Judge, and Armstrong, Senior Judge.

LAGESEN, C. J.

Convictions on Count 1 in Case No. 21CR60063 and Count 1 in Case No. 21CR59631 reversed and remanded for entry of judgment of conviction for a single count of felon in possession of a firearm; remanded for resentencing; otherwise affirmed.

**LAGESEN, C. J.**

In this consolidated criminal case, defendant appeals a judgment of conviction for first-degree manslaughter, unlawful possession of a weapon, and two separate counts of felon in possession of a firearm. Defendant waived her right to a jury and was convicted by the court in a stipulated facts trial.[1] The charges stemmed from an incident in which she fatally shot her boyfriend, D. On appeal, she first assigns error to the trial court's denial of her pretrial motion to declare borderline personality disorder a "qualifying mental disorder" for purposes of a defense of either (1) guilty except for insanity (GEI) under ORS 161.295, or (2) partial responsibility under ORS 161.300. Defendant asserts that her ability to rely on those defenses was thwarted by the trial court's denial of her pretrial motion. Next, defendant assigns error to the trial court's failure to merge the felon-in-possession verdicts charges. The state concedes the second assignment of error. We affirm on the first and accept the state's concession and reverse on the second.

*Qualifying mental disorder.* In her first assignment of error, defendant argues that the trial court erroneously denied her motion to declare borderline personality disorder a qualifying mental disorder for purposes of ORS 161.295 (providing for a GEI defense based on a qualifying mental disorder) and ORS 161.300 (providing that evidence of a qualifying mental disorder is admissible when relevant to a defendant's intent). Whether a particular condition is a "qualifying mental disorder" for purposes of those statutes is a question of law, making our review for legal error. *See, e.g.*, *Beiswenger v. PSRB*, 192 Or App 38, 45, 84 P3d 180 (2004) (treating the determination as one of law).

ORS 161.295(1) provides the elements a defendant must prove to qualify for the GEI defense: (1) "qualifying mental disorder"; (2) lack of "substantial capacity either to appreciate the criminality of the conduct or to conform the

---

[1] The state charged defendant with murder. But, relying in part on defendant's borderline personality disorder, the trial court found that defendant was suffering an extreme emotional disturbance (EED) at the time of the crime, so found her guilty of the lesser-included offense of manslaughter. *See* ORS 163.118; ORS 163.135.

conduct to the requirements of law"; and (3) "a causal link between the two." ORS 161.295(1); *State v. Meiser*, 369 Or 347, 354, 506 P3d 402 (2022) (*Meiser I*). ORS 161.300 similarly makes evidence of a qualifying mental disorder admissible when relevant to the assessment of whether a defendant had the requisite criminal intent. This case presents the question of whether borderline personality disorder is a "qualifying mental disorder" for purposes of those statutes.

Rather than define with particularity what conditions are qualifying mental disorders, the legislature has specified what conditions are not:

> "[T]he term 'qualifying mental disorder' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor does the term include any abnormality constituting *solely a personality disorder.*"

ORS 161.295(2) (emphasis added); *see also Beiswenger*, 192 Or App at 45 ("ORS 161.295, however, explicitly imposes some limits on the term by describing what is *not* included ***." (Emphasis in original.)).

Defendant acknowledges that the plain text of the statute excludes personality disorders from the list of qualifying mental diseases or defects. Nonetheless, pointing to the legislative history of the personality-disorder exclusion, she argues that, notwithstanding the legislature's stated intention to exclude personality disorders from consideration for purposes of the defenses under ORS 161.295 and ORS 161.300, the fact that borderline personality disorder was not among the disorders specifically mentioned when that exclusion was adopted supports the conclusion that the legislature did not intend to preclude borderline personality disorder as a qualifying mental disorder.[2]

We reject that argument for two reasons.

---

[2] Defendant also notes that the trial court stated that it was denying defendant's motion because defendant failed to present expert testimony. She argues that that ruling was erroneous because, under our case law, whether a disorder qualifies as a personality disorder is a question of law. Thus, in defendant's view, the trial court erred by treating the issue as one of fact. We agree with the parties that, on this record, the question is one of law. To the extent the trial court viewed the issue as one of fact, that does not provide grounds for reversal because we conclude, as a matter of law, that borderline personality disorder is a personality disorder for purposes of ORS 161.295

First, although we have recognized that the term "personality disorder" is ambiguous, that was in the context of assessing whether conditions not specifically designated as personality disorders under the *Diagnostic and Statistical Manual of Mental Disorders* (DSM) qualified as personality disorders under the statute. *Beiswenger*, 192 Or App at 45-46.[3] As we concluded in *Beiswenger*, the statutory term "personality disorder" includes sexual misconduct disorders and alcohol and drug dependency. *Id.* at 46 (stating that it is "plausible that the legislature could have intended" the inclusion of these conditions under the term personality disorder"). We have never held that a disorder that is specifically classified as a personality disorder under the DSM-III does not qualify as a personality disorder under the plain terms of the statute.

On the contrary, the Supreme Court has recognized that the term must be considered in the "context of professional disciplines such as psychiatry and psychology, although here, of course, [its] application has specific legal consequences." *Tharp v. PSRB*, 338 Or 413, 423, 110 P3d 103 (2005). Viewed in that context, the most natural reading of the term "personality disorder" in ORS 161.295 is as including all disorders specifically designated as personality disorders in the DSM, in addition to other disorders that have the characteristics identified in *Beiswenger*. Had the legislature intended that one or more of the disorders designated in the DSM as personality disorders not be treated as personality disorders for purposes of ORS 161.295, we think it would have been clearer about that intention by, for example, identifying such disorders specifically.

Second, contrary to defendant's argument, the legislative history suggests that the legislature intended

---

[3] In *Beiswinger*, we looked to the DSM-III in assessing whether a condition was an excluded personality disorder. *See Diagnostic and Statistical Manual of Mental Disorders* (3d ed rev 1987) (DSM-III-R). More recently, we have looked to the DSM-5 when evaluating psychiatric terms of art. *See Diagnostic and Statistical Manual of Mental Disorders* (5th ed 2013) (DSM-5); *see, e.g., State v. A. B. K.*, 323 Or App 246, 250, 522 P3d 894 (2022). In so doing, we did not address a potential timing issue: whether to look to the edition of the DSM available at the time the legislature promulgated a particular term, or whether to look to the edition of the DSM available at the time of the decision. We need not resolve that potential timing issue here because, as the state points out, both the DSM-III and the DSM-5 classify borderline personality disorder as a personality disorder. DSM-III at 305, 321-23; DSM-5 at 663.

the phrase "personality disorder" to be expansive, so as to narrow the availability of the defenses described in ORS 161.295 and ORS 161.300. *Tharp*, 338 Or at 428 ("The bill as amended further limits the scope of mental diseases or defects for which a person may be found, under present law, 'not responsible.'" (Quoting Staff Measure Analysis, House Committee on Judiciary, HB 2075 (1983).)). Although defendant is correct that the history does not appear to address borderline personality disorder specifically, that "oft-repeated" history, as recounted recently in *Meiser II*, is "replete with references to the legislature's intent to narrow the availability of the GEI defense." *State v. Meiser*, 323 Or App 674, 684, 524 P3d 130 (2023) (*Meiser II*), *rev'd and remanded on other grounds*, 372 Or 438 (2024); *see also Meiser I*, 369 Or at 360 (the 1983 amendment excluding personality disorders intentionally "narrows access to the defense set out in subsection (1)"). In our view, it would be at odds with that history to conclude that a disorder specifically classified as a personality disorder can nevertheless constitute a qualifying mental disorder under ORS 161.295 or ORS 161.300.

For those reasons, the trial court did not err in denying the motion to declare borderline personality disorder a qualifying mental disorder.

*Merger.* In support of her second assignment of error, defendant asserts that, under *State v. O'Dell*, 264 Or App 303, 310, 330 P3d 1261 (2014), the trial court plainly erred when it failed to merge the guilty verdicts on the felon-in-possession charges. The state concedes that the trial court plainly erred. We agree, accept the state's concession, and exercise our discretion to correct the error. *See State v. Ferguson*, 276 Or App 267, 275, 367 P3d 551 (2016) (holding that it was appropriate to exercise discretion to correct the trial court's error in failing to merge multiple guilty verdicts).

Convictions on Count 1 in Case No. 21CR60063 and Count 1 in Case No. 21CR59631 reversed and remanded for entry of judgment of conviction for a single count of felon in possession of a firearm; remanded for resentencing; otherwise affirmed.