No. 762 August 27, 2025 75

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIK JOHN MEISER,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1201547; A166534

On remand from the Oregon Supreme Court, *State of Oregon v. Erik John Meiser*, 372 Or 438, 551 P3d 349 (2024).

Katherine E. Weber, Judge.

Submitted on remand July 23, 2024.

Daniel J. Casey filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the briefs for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGAN, J.

Affirmed.

PAGÁN, J.

This case involves the trial court's rejection of defendant's defense of guilty except for insanity (GEI) and is before us on remand from the Supreme Court for the second time. *State v. Meiser*, 372 Or 438, 551 P3d 349 (2024) (*Meiser IV*). For the reasons explained below, we conclude that, viewing the evidence in the light most favorable to the state, the evidence does not compel a finding that defendant lacked substantial capacity either to (a) appreciate the criminality of the conduct or to (b) conform the conduct to the requirements of law. ORS 161.295(1); *see also State v. Meiser*, 308 Or App 570, 572, 481 P3d 375 (2021), *rev'd*, 369 Or 347, 506 P3d 402 (*Meiser I*) (setting out standard of review). Because that conclusion is dispositive, we do not address whether defendant carried his burden of proving by a preponderance of the evidence that he experienced a qualifying incapacity "as a result of" his schizophrenia as required by ORS 161.295(1). Affirmed.

## I.  PROCEDURAL HISTORY

The facts of this case are recounted in the earlier decisions of both our court and the Oregon Supreme Court, and it is unnecessary for us to repeat them here. As relevant to the issues before us on remand, a summary of the trial and appellate proceedings is sufficient.

ORS 161.295(1), the guilty except for insanity (GEI) statute, excuses from criminal responsibility individuals who, as a result of mental disease or defect, lack substantial capacity either to appreciate the criminality of their conduct or to conform their conduct to the requirements of the law.[1] To prove the affirmative defense of GEI, a defendant must show that they suffered from (1) a mental disease or defect (2) that resulted in a (3) lack of substantial capacity to (a) appreciate the criminality of the conduct or (b) to conform the conduct to the requirements of law. *See Meiser IV*, 372 Or at 442 (stating the elements as provided in ORS 161.295(1)). The statute excludes personality disorders from the definition of "mental disease or defect." ORS 161.295(2).

---

[1] At the time the crimes were committed in 2012, the statute used the terms "mental disease or defect." ORS 161.295(1) (2011), *amended by* Or Laws 2017, ch 637, § 3. The legislature amended the statue in 2017 to replace the words "mental disease or defect" with the term "qualifying mental disorder."

	Defendant was charged with multiple crimes, including several counts of aggravated murder and burglary, arising from an incident in 2012. The aggravated murder charges were based on the killing of one person, FH. On multiple occasions, the trial court found defendant unfit to stand trial by reason of incapacity, and he spent nearly four years in confinement at the Oregon State Hospital before the trial court found him fit to stand trial. *See* ORS 161.360 (stating that a defendant may be found incapacitated if "unable to understand the nature of the proceedings[,] *** [t]o assist and cooperate with counsel[,] *** [or] participate in the defense of the defendant").

	The case proceeded as a bench trial. Defendant did not dispute that he committed the charged acts but raised the GEI defense. The trial court, sitting as factfinder, concluded that defendant had proven the GEI defense for some counts, but not for the aggravated murder counts or for one of the burglary counts. On the aggravated murder counts, the trial court found defendant guilty of murder as a lesser-included offense and merged the guilty verdicts into a single conviction. As to the burglary count, the trial court found defendant guilty of second-degree burglary as charged.

	On appeal, defendant assigned error to the trial court's rejection of his GEI defense to the murder charge. Defendant addressed all three elements of the defense; the first element—that defendant suffered from a qualifying mental disease or defect at the time of the murder, *i.e.*, schizophrenia—was not disputed. However, the second and third elements were disputed and raised the question of whether defendant, as a result of his schizophrenia, lacked the requisite capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *Meiser I*, 308 Or App at 576-77.

	We concluded that, based on the experts' testimony and defendant's statements about the crimes, a reasonable factfinder could find that any lack of capacity that defendant experienced was caused by a combination of his schizophrenia and his personality disorder. *Id.* at 585. That is, "the evidence permitted the factfinder to conclude, at the least, that defendant's schizophrenia and antisocial personality

disorder were both active impairments." *Id.* "Therefore, defendant did not establish, as a matter of law, the causation element of the GEI defense." *Id.* at 585-86.

On review, the Oregon Supreme Court held that we had erred in holding in *Meiser I* that "defendant could prevail on his GEI defense only if he proved that his co-occurring personality disorder played *no* part in causing the requisite lack of substantial capacity." *State v. Meiser*, 369 Or 347, 360-61, 506 P3d 402 (2022) (*Meiser II*). Thus, because we "did not consider—except under the 'sole cause' test ***—whether the evidence compelled a finding that defendant proved that he had experienced any qualifying incapacity 'as a result of mental disease or defect,'" the court remanded for us to determine whether defendant had proved the required connection.[2] *Id.* The court noted that resolution of that question may depend on whether the "phrase 'as a result of' in ORS 161.295(1) means that the qualifying 'mental disease or defect' must be sufficient, on its own, to bring about the requisite incapacity, or whether the legislature intended to require some lesser degree of causal contribution from the qualifying 'mental disease or defect.'" *Id.* On remand, we construed the GEI statue as adopting that "independent sufficiency" standard and affirmed the conviction. *State v. Meiser*, 323 Or App 674, 685, 524 P3d 130 (2023) (*Meiser III*).

The Oregon Supreme Court again granted review and rejected our conclusion that defendant's mental disease or defect must be "sufficient by itself" to bring about the requisite lack of capacity. *Meiser IV*, 372 Or 438 at 459. The court explained that the established methods of statutory interpretation supported giving the term "result" in ORS 161.295(1) its "plain, natural, and ordinary meaning: 'consequence' or 'effect.'" *Meiser IV*, 372 Or 438 at 459; *see also State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (stating the methods of statutory interpretation). Thus, for a defendant to qualify for the GEI defense, the lack of capacity need not be solely attributable to the mental disease or defect; rather, a set of conditions could combine to result in the lack

---

[2] The court also noted that the issue of whether defendant's evidence compelled a conclusion that he had proved the third element of the defense—that he lacked the requisite capacity—was still an open one, because we did not address it in *Meiser I*. *Meiser II*, 369 Or at 361.

of capacity. *See Meiser IV*, 372 Or 438 at 458 ("ORS 161.295 shows that the legislature intended the GEI defense to be available if a defendant's lack of capacity was a consequence or effect of the defendant's mental disease or defect, even if it was also the consequence or effect of another condition.").

## II.   ANALYSIS

With the Supreme Court's direction in mind, we turn to our analysis. That requires us to reconsider the GEI defense and consider whether the evidence compelled a conclusion that defendant had proved the third element of the defense—that he lacked the requisite capacity either to (a) appreciate the criminality of the conduct or to (b) conform the conduct to the requirements of law. *See Meiser II*, 369 Or at 361 (remanding for us to consider whether "the evidence compelled a finding that defendant proved that he had experienced any qualifying incapacity as 'a result of mental disease or defect,'" and noting that the issue of whether defendant's evidence compelled a conclusion that he had proved the third element of the defense was still an open one because we had not needed to address it in *Meiser I*.). Regarding that third element, we conclude that defendant did not carry his burden of proving that he lacked the requisite capacity either to appreciate the criminality of the conduct or to conform his conduct to the requirements of law. And, as we already noted, because that conclusion is dispositive, it obviates the need to address the issue of whether defendant lacked capacity under the plain meaning of the term "result."

### A.   *Appreciate the Criminality of the Conduct*

As indicated, ORS 161.295(1) excuses criminal responsibility when a defendant proves by a preponderance of the evidence that, as a result of a mental disease or defect, he "lack[ed] substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."

Relying on the Supreme Court's decision in *State v. J. C. N.-V.*, 359 Or 559, 380 P3d 248 (2016), defendant argues that the word "appreciate," as used in ORS 161.295(1), requires an emotional understanding of the criminality of his conduct,

which, in his view, equates with subjective morality. In his opening brief, defendant argues that he proved his affirmative defense as a matter of law because the evidence admitted at trial is susceptible to only one interpretation: that he subjectively believed that he was morally justified in murdering the victim to protect his children. Through that argument, defendant relies on the fact that, when asked for their opinion on the GEI defense, psychiatrist and GEI evaluator Dr. Choi and psychologist Dr. Beaver both testified that defendant lacked the substantial capacity to appreciate the criminality of his conduct due to his schizophrenia. Specifically, Choi testified that, under a "subjective moral standard," defendant believed that his acts were justified by the need to save his children, and that he lacked such emotional appreciation as a result of his schizophrenic delusions, hallucinations, and distorted thinking. The basis for Beaver's opinion was that defendant's belief in the need to save his children—caused by his delusions and hallucinations—dominated defendant's reasoning.

Since *J. C. N.-V*, the word "appreciate" in the GEI context has been clarified to mean that the offender must be "'emotionally as well as intellectually aware of the significance of his conduct.'" *Jenkins v. Cain*, 310 Or App 608, 616, 487 P3d 4339 (2021) (quoting *J. C. N.-V.*, 359 Or at 581). However, even under that subjective moral standard of the word "appreciate," the state argues—and we agree—that the evidence in the record does not inescapably lead to the conclusion that defendant lacked the substantial capacity to appreciate the criminality of his conduct.

First, there is evidence in the record indicating that defendant was aware that his conduct was criminal. When interviewed by police, defendant stated: "I know that's not the way things are done in America. I'm under no illusion. Well, that is actually how the way things are done in America, but that's not legally the course of action that maybe has the right to take, and I understood that." And defendant's experts acknowledged that defendant understood that killing is wrong and that he was aware that he was committing a crime at the time of the murder.

Second, defendant's actions immediately following the murder demonstrated that he knew his actions were

illegal. Defendant told police that, immediately after killing the victim, he went back into the house to get his backpack because he "didn't want to leave any evidence behind," went into another house to take a shower and change his clothes, "ducked and dodged" his way through the neighborhood "very labyrinth-like," shaved his beard, tossed the clothes he had been wearing that were covered in blood, and broke into a garage to try and steal a vehicle—all for the purpose of evading capture.

Thus, although defendant may have felt he was justified in committing the murder, the evidence—which included defendant's immediate and non-delusional attempts to avoid capture—does not necessarily lead to the conclusion that all reasonable factfinders would have to find that defendant lacked the capacity to appreciate the criminality of his conduct.

B.  *Conform Conduct to the Law*

Defendant also argues that, as a matter of law, the evidence established that, as a result of his schizophrenia, he lacked "substantial capacity * * * to conform [his] conduct to the requirements of law[,]" ORS 161.295(1), and a rational factfinder could not reasonably conclude otherwise. Defendant again bases his arguments largely on the testimony of the two experts at trial,[3] contending that, although the factfinder was not required to have accepted and credited the expert testimony, the evidence on which they based their opinions was largely undisputed. Defendant argues that in light of the "undisputed evidence of the schizophrenic delusions, hallucinations, and distorted thinking [defendant]

---

[3] Defendant notes that Choi testified that his opinion was: (1) that defendant was experiencing "command-auditory hallucinations" directing him to "to choose [the victims] * * * and to kill them," which defendant was able to resist at times and had difficulty resisting at others; (2) that defendant was "highly psychotic" at the time, as demonstrated by "the presence of intense auditory hallucinations" and "the depth of his delusions and * * * thought disorganization[,]" resulting in him being "substantially impaired in generating and considering rational alternatives"; and (3) as noted, that defendant felt morally justified in his actions based on his delusions and perceived need to protect his children, which removed his inhibitions. The basis for Beaver's opinion on this element was also that defendant had been "floridly psychotic" at the time of the murder, which impaired his ability to reason and perceive the world accurately, and that he was being commanded and driven to do certain things to save his children and his wife, and he believed he had no other choice.

was experiencing at the time of the murder *** a rational fact-finder could not reasonably conclude that defendant did not lack substantial capacity to conform his conduct to the requirements of law."

We disagree that a rational factfinder would necessarily be compelled to find that defendant lacked the capacity to conform his conduct to the law when he committed the murder. Notably, defendant gave various explanations for why he killed the victim. One explanation was that he panicked after his intended robbery victims became "panicked" and would not cooperate with his directives. Another was that he "lashed out," deciding "that this was going to be the person who I victimized in return for my victimization," and Choi testified that, at the time of the murder, defendant "was very angry, *** and that anger was a part of his motivation for the acts that he did." Neither of those explanations compel the conclusion that a rational trier of fact could reach one, and only one, conclusion—that defendant lacked the substantial capacity to conform his behavior to the law.

Notably, defendant did not assert that he was unable to control himself due to feelings of either panic or anger. And there was evidence to suggest that defendant was making logical and deliberate choices *during* the murder, indicative of the ability to conform his behavior to the law. Defendant told police that, after striking the victim with the machete the first time, he was planning to go back into the house to retrieve his backpack and ensure that he did not leave evidence behind, but the victim tried to get up and was making noise, so defendant struck him with the machete several more times until the noise stopped. A rational factfinder could conclude that, despite feeling panicked or angry, defendant was in control of his behavior, and was making calculated choices that suited his needs both during and after the murder.

To be sure, defendant later told Choi that he killed the victim because of his delusions, claiming that he felt he "had to kill somebody" to save his family. That was the version of events that Choi relied on in formulating his opinion that defendant lacked substantial capacity to conform his conduct to the law. But a rational factfinder was free to

not credit defendant's claim that he felt compelled to kill the victim. That is especially so given defendant's conflicting explanations for his actions and other evidence demonstrating that defendant's delusions and auditory hallucinations were not violent in nature, but focused on financial gain. *State v. Aguirre-Rodriguez*, 367 Or 614, 623, 482 P3d 62 (2021) ("Where the evidence gives rise to multiple reasonable inferences, the choice between those inferences— so long as those inferences are reasonable—is a matter for the factfinder."); *see also State v. Krummacher*, 269 Or 125, 137-38, 523 P2d 1009 (1974) (on a motion for judgment of acquittal, all conflicts in the evidence are resolved in favor of the state). Ultimately, the evidence was not such that all rational factfinders were required to find that defendant lacked substantial capacity when he killed the victim.

In sum, viewing the evidence in the light most favorable to the state, a factfinder could reasonably conclude that defendant appreciated the criminality of his conduct, that his actions and that his statements demonstrated that he was capable of conforming his conduct to requirements of law, and that he therefore did not have the requisite lack of capacity to compel an acquittal based on GEI.

Affirmed.