Argued and submitted August 25, 2010, affirmed March 30, petition for review denied July 28, 2011 (350 Or 571)

JOSHUA DOUGLAS PETERS,
*Petitioner-Appellant,*

*v.*

Brian BELLEQUE,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
08C22007; A141739

250 P3d 456

David B. Kuhns argued the cause and filed the brief for appellant.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Petitioner, who was convicted of murder, appeals from a judgment denying his petition for post-conviction relief. He asserts two assignments of error. In the first, he argues that he is entitled to post-conviction relief because his criminal trial counsel was constitutionally inadequate in various respects related to the presentation of his defense of extreme emotional disturbance, which, if successful, would have resulted in a conviction for first-degree manslaughter, rather than murder. As explained below, we conclude that the post-conviction court did not err in denying petitioner's petition on that ground. In his second assignment of error, petitioner challenges the denial of his petition based on asserted trial court error—specifically, that the trial court in his criminal case "unconstitutionally erred" in its analysis and ultimate conclusion that petitioner failed to prove the defense. We reject that assignment without discussion. *See Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994) (a petitioner is generally barred from raising an issue during post-conviction proceedings that reasonably could have been raised in the underlying criminal proceeding, except as to an inadequate assistance of counsel claim). Accordingly, we affirm.

To give context to the parties' arguments, we first set out the elements of the extreme emotional disturbance defense, as defined in ORS 163.135 (2001).[1] That statute provided, in part:

"(1)   It is an affirmative defense to murder for purposes of ORS 163.115(1)(a)[2] that the homicide was committed

---

[1] ORS 163.135 has since been amended. Or Laws 2003, ch 127, § 1. However, those amendments became effective January 1, 2004, and therefore do not apply in this case. We thus refer to the 2001 version of the statute throughout this opinion.

[2] ORS 163.115(1)(a), in turn, provides:

"Except as provided in ORS 163.118 * * *, criminal homicide constitutes murder:

"(a) When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

ORS 163.118(1)(b) provides:

"Criminal homicide constitutes manslaughter in the first degree when:

under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation. The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be. Extreme emotional disturbance does not constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

ORS 163.135(1). The defense of extreme emotional disturbance under ORS 163.135 has three components, which the Supreme Court has explained this way:

"(1) Did the defendant commit the homicide under the influence of an extreme emotional disturbance? (2) Was the disturbance the result of the defendant's own intentional, knowing, reckless, or criminally negligent act? (3) Was there a reasonable explanation for the disturbance?"

*State v. Counts*, 311 Or 616, 623, 816 P2d 1157 (1991) (footnote omitted). Because it is an "affirmative defense," ORS 163.135, the defendant has the burden of proving each component by a preponderance of the evidence. ORS 161.055(2) ("When a defense, declared to be an 'affirmative defense' by chapter 743, Oregon Laws 1971, is raised at a trial, the defendant has the burden of proving the defense by a preponderance of the evidence."); *State v. Haley*, 64 Or App 209, 667 P2d 560 (1983) (absent express direction or contextual requirement to the contrary, the defendant bears the burden of proof with respect to all affirmative defenses, including those created after 1971).

We turn to the facts and history of this case. In 2003, petitioner shot and killed his girlfriend, with whom he had a "tumultuous on-again/off-again relationship." He was charged with murder, and the case was tried to the court.

---

"* * * * *

"(b) It is committed intentionally by a defendant under the influence of extreme emotional disturbance as provided in ORS 163.135, which constitutes a mitigating circumstance reducing the homicide that would otherwise be murder to manslaughter in the first degree and need not be proved in any prosecution[.]"

Petitioner stipulated to the homicide; the issue at trial was whether petitioner was suffering from an extreme emotional disturbance under ORS 163.135 at the time of the shooting and, therefore, should be found guilty of manslaughter in the first degree, rather than murder. ORS 163.115(1)(a); ORS 163.118(1)(b).

At the time of the crime, petitioner was 32 years old and the victim was 52. Their relationship was consistently described as turbulent. According to petitioner's mother and other witnesses, petitioner had a history of depression that worsened after he became involved with the victim. The victim was emotionally volatile and had frequent angry outbursts; one witness, a neighbor, testified that the victim would be "nice and happy one moment and then flip the switch, she's yelling and screaming." The victim also had a history of alcohol and drug abuse, as well as dental and other physical problems that caused her significant pain.

Petitioner and the victim lived together for several years before the murder, but, on several occasions, petitioner either left or asked the victim to move out as a result of the conflicts between them. Those separations lasted anywhere from a few days to one and one-half months. Petitioner testified that the victim often became full of rage and would storm around the house, slamming doors and screaming at petitioner. Petitioner and his mother both testified to one incident in July 2003 when they came back from a weekend trip to the coast to find that the victim had splattered blood all over the walls and surfaces of the home where petitioner and the victim then lived. The victim claimed that she had cut her finger and was looking for a Band-Aid. Petitioner also testified that the victim had threatened suicide on several occasions, although he also indicated that she had never actually made a suicide attempt while she was with him.

There was evidence of prior physical violence between the couple; twice petitioner came to work with a black eye; another time, he had scratch marks on his neck, where, he said, the victim had tried to choke him. Although petitioner was described as a shy, quiet person who was not generally aggressive, there was also evidence that, in previous altercations with the victim, petitioner became anxious

to the point where he was physically violent toward her. Petitioner himself testified as to two incidents in which the victim "would come at me physically and just push me and push me and push me until I would have to push her back." In one of those incidents, petitioner testified that he pushed the victim and she fell onto the bed frame, injuring her ankle; another time, he pushed her and she fell onto a coffee table, badly cutting her calf.

The wife of one of petitioner's coworkers testified that petitioner sometimes stayed at their house because "[h]e wanted to get away from [the victim] because she was being physically abusive to him and he didn't want to hurt her and so he stayed away." Petitioner also testified that he slept in his truck to avoid confrontations with the victim; several months before the murder, petitioner moved into the spare room in their house because he was so upset by the victim's chaotic behavior. Friends and family members testified that petitioner stayed with the victim because he felt responsible for her and because he worried that she did not have a job or financial resources and would not be able to sustain herself without him.

A few days before the murder, petitioner and the victim spent a nice evening together in celebration of petitioner's birthday. Later that night, however, the victim became upset and angry, slamming doors and screaming. Petitioner testified that

> "[the victim] was saying she wanted people * * * to run into the house and kill her. She wanted—she screamed out to God to take her out. She screamed things like, I'm going to rob a bank, I'm going to go down and kill my mom, just all those kind of—I mean, just she was sick of the pain she said."

According to petitioner, he was unable to console her. The following day, petitioner went to work and, when he came home, the house was a mess—"there were dishes all over the place, broken dishes, glasses, things strewn around the house, her clothes." The next day, petitioner again went to work. When he came home that evening, he avoided the victim, staying in the master bedroom for the most part. However, he could hear the victim in other parts of the house

slamming doors and saying the same things over and over about having "someone come in and take her out." At some point, petitioner decided to leave and began packing some clothes. When the victim came into the bedroom and realized what petitioner was doing, she ran out of the room and came back, flicking blood on him and pushing him, telling him that she would not let him leave. Petitioner testified that he pushed her off of him and onto the bed. He then grabbed her and pushed her to the ground so that she was in a kneeling position and he was holding her hair. He asked her if she "really want[ed] to die," reached into his closet, pulled out a gun, and asked her again, "are you sure this is what you want?" When she said "yes," he shot her twice in the head.

The trial court rejected petitioner's defense of extreme emotional disturbance and found him guilty of murder. The trial court concluded that petitioner established the first component of the defense—that the homicide was committed under an extreme emotional disturbance,[3] but failed to prove the second—that "such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act." The court did not address the third element. The court explained:

"I don't believe that the defense has met its burden in the totality required by the statute. I do believe [petitioner] was acting under an extreme emotional disturbance. I do believe [one witness] had the wrong standard. I do believe that it could be a cumulative effect. I believe that's what it was. It was the last straw.

"However, I do also believe that it was at least reckless for [petitioner] to continue this relationship, after the numerous separations that had happened. As [one witness] said, there was no good going to come of this. And she pretty much predicted the future. That's the ruling of the court."[4]

---

[3] Under that element, the trier of fact must decide whether the defendant "was under the influence of an emotional disturbance to the extent that he lost his self-control that would have otherwise prevented his committing the homicide." *State v. Ott*, 297 Or 375, 393, 686 P2d 1001 (1984).

[4] The transcript of petitioner's criminal trial admitted as an exhibit in the post-conviction proceeding is incomplete; among other serious deficiencies, it does not include the pages containing the trial court's ruling. (Indeed, the final volume of the trial transcript—which contains, among other things—the parties' closing arguments and the court's ruling, is missing two out of every four pages.) We quote

Petitioner appealed, challenging the trial court's conclusion that he had not satisfied the "reckless" component of the defense. We affirmed petitioner's conviction without opinion, and the Supreme Court denied review. *State v. Peters*, 216 Or App 337, 172 P3d 305 (2007), *rev den*, 344 Or 401 (2008).

Petitioner then sought post-conviction relief pursuant to ORS 138.510 to 138.680, asserting ineffective assistance of trial counsel under the state and federal constitutions[5] and "constitutionally defective" error by the trial court. Petitioner's ineffective assistance of counsel claim was predicated on his trial counsel's asserted failure to (1) argue to the court the correct definition and application of the term "reckless" as used in the second component of the defense under ORS 163.135; (2) "object or otherwise bring to the trial court's attention that it had incorrectly applied the term" after the court rendered its verdict; and (3) move for a judgment of acquittal (MJOA) or otherwise challenge the legal sufficiency of the evidence to support a conviction for murder. In an affidavit received in evidence at the post-conviction proceeding, petitioner's trial counsel explained that, because the state never argued that the extreme emotional disturbance was a result of petitioner's own reckless conduct, but instead focused on the other two components of the defense, it was reasonable for counsel not to draw attention to that issue. Counsel also stated that they "did not believe there was a legal basis to object to the judge's verdict and conclusions regarding the term 'reckless' at that time and determined that the best course of action would be to file a notice of appeal * * *." Finally, counsel stated their belief that an MJOA was not necessary because "closing argument was the appropriate method of explaining to the Court why the evidence was insufficient to support a conviction of Murder and

---

the trial court's ruling from the petitioner's brief on direct appeal, which was also admitted into evidence in the post-conviction proceeding.

[5] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right to * * * be heard by himself and counsel[.]"

The Sixth Amendment to the United States Constitution provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

that the affirmative defense of [extreme emotional disturbance] had been established." The post-conviction court denied relief, and petitioner raises the same arguments on appeal. He also argues that he is entitled to relief based on "cumulative error."

We begin our analysis with the legal principles governing post-conviction relief. To be entitled to post-conviction relief based on inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, petitioner must prove, by a preponderance of the evidence, that counsel "failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result," *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995) (internal quotation marks omitted), that is, that "counsel's failure had a tendency to affect the result of his trial," *Burdge v. Palmateer*, 338 Or 490, 492, 112 P3d 320 (2005) (internal quotation marks omitted).

The standard for proving ineffective assistance of trial counsel under the Sixth Amendment to the United States Constitution is similar. *Montez v. Czerniak*, 237 Or App 276, 278 n 1, 239 P3d 1023 (2010) (noting that "[t]he standards for determining the adequacy of counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution"). Under the Sixth Amendment, petitioner must prove that "counsel's representation fell below an objective standard of reasonableness" and that petitioner suffered prejudice as a result, that is, that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, ___ US ___ , ___ , 178 L Ed 2d 624, 131 S Ct 770, 787 (2011) (quoting *Strickland*, 466 US at 689). In assessing prejudice,

"*Strickland* asks whether it is 'reasonably likely' the result would have been different. [466 US] at 696, 104 S Ct 2052. This does not require a showing that counsel's actions 'more

likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' *Id.* at 693, 697, 104 S Ct 2052. The likelihood of a different result must be substantial, not just conceivable. *Id.* at 693, 104 S Ct 2052."

*Harrington*, ___ US at ___ , 131 S Ct at 792.

■      Petitioner's first two specifications of ineffective assistance of counsel require little discussion. Those interrelated arguments involve trial counsel's alleged deficiency in ensuring that the trial court properly understood and applied the second prong of the defense—specifically, that the extreme emotional disturbance under the influence of which petitioner committed homicide was not the result of petitioner's own reckless act. ORS 163.135(1). Essentially we understand petitioner to be arguing that, given the court's phrasing of its rationale for rejecting petitioner's defense, any reasonably competent counsel would have understood the court to have misunderstood what petitioner was required to prove in order to establish the second element of the defense and, accordingly, would have objected or attempted to clarify that point after the court announced its verdict. We disagree. Given the record before us, it is far from clear that the trial court applied an incorrect analysis of the "reckless" standard, thereby triggering an obligation by defense counsel to intervene. In short, we are not persuaded that the post-conviction court erred in determining that petitioner failed to carry his burden of proving that trial counsel was inadequate in not making that argument.

We turn to petitioner's contention that his trial counsel were ineffective in "fail[ing] to move for a judgment of acquittal or to otherwise challenge the legal sufficiency of the evidence." In this context—that is, where the sufficiency of the state's evidence that petitioner committed the homicide is not disputed, but, rather, the only issue is whether petitioner has established his affirmative defense—that argument reduces to whether petitioner's trial counsel were constitutionally inadequate in not arguing that petitioner was entitled to prevail, as matter of law, on his defense of extreme

emotional disturbance, thus requiring conviction for first-degree manslaughter instead of murder.[6]

The state[7] does not defend the adequacy of trial counsel's performance in that regard, but asserts that petitioner failed to establish prejudice resulting from the alleged deficiency. *See Warren v. Baldwin*, 140 Or App 318, 322, 915 P2d 1016, *rev den*, 324 Or 229 (1996) (we need not reach the question of inadequate performance unless it resulted in prejudice to petitioner). That is a question of law that, in turn, may depend on predicate findings of fact. *Krieg v. Belleque*, 221 Or App 36, 39, 188 P3d 413, *rev den*, 345 Or 317 (2008). According to the state, petitioner would not have prevailed on such an argument—had it been made—because, considering the evidence in the light most favorable to the state, a reasonable trier of fact *could* have found that petitioner failed to prove the defense. As a result, the state argues, petitioner failed to carry his burden of establishing that he was prejudiced by his trial counsel's performance. We agree with the state.

As noted, prejudice arises only from those acts or omissions of counsel that "have a tendency to affect the result of the prosecution." *Krummacher v. Gierloff*, 290 Or 867, 883, 627 P2d 458 (1981); *see also Strickland*, 466 US at 696 (a petitioner is only prejudiced by counsel's actions if it is "reasonably likely" the result would have been different absent the errors). Thus, petitioner's entitlement to post-conviction relief depends on the merits of the argument that he asserts his counsel failed to make—*i.e.*, that he was entitled, as a matter of law, to conviction for first-degree manslaughter

---

[6] We note that a motion for judgment of acquittal is not a precise fit in this situation because the state is not required to present any evidence to disprove an affirmative defense; defendant must prove it. ORS 161.055(2). And, even if the defense is established, the result is not a complete acquittal. *See* ORS 136.445 (providing that the court shall grant a motion for judgment of acquittal "if the evidence introduced theretofore [*i.e.*, after close of the state's evidence or of all the evidence] is such as would not support a verdict against the defendant"). However, it does fit in the sense that "an acquittal of the charge of murder occurs when the jury finds that the defendant is guilty only of manslaughter." *State v. Ott*, 297 Or 375, 377 n 2, 686 P2d 1001 (1984).

[7] To reduce confusion, we refer to respondent, the defendant below, as "the state."

rather than murder, based on his proof of the extreme emotional disturbance defense. *Custer v. Baldwin*, 163 Or App 60, 64, 986 P2d 1203 (1999), *rev den*, 329 Or 589 (2000); *see also Abbott v. Baldwin*, 178 Or App 289, 296-302, 36 P3d 516 (2001), *rev den*, 334 Or 75, *cert den*, 537 US 901 (2002) (addressing whether the petitioner was prejudiced by his trial counsel's failure to raise a statute of limitations defense by determining the merits of that defense); *Warren*, 140 Or App at 333-34 (defense counsel was not constitutionally deficient in failing to move for a judgment of acquittal on basis of self-defense defense where that motion would not have succeeded).

■■ On a motion for judgment of acquittal, all conflicts in the evidence are resolved in favor of the state. *State v. Krummacher*, 269 Or 125, 137-38, 523 P2d 1009 (1974). Similarly here, for petitioner to prevail, the evidence before the trial court, taken in the light most favorable to the state, must permit only one reasonable conclusion—that petitioner established each element of the defense. We conclude that a reasonable trier of fact could have found that petitioner failed to prove the third element of the defense—that there was a "reasonable explanation" for petitioner's extreme emotional disturbance.[8] Given that conclusion, we need not address the state's argument that a reasonable trier of fact could also find that petitioner failed to establish the second element—that the emotional disturbance was not the result of his own reckless act. Thus, petitioner has not demonstrated that he was prejudiced by his counsel's performance.

ORS 163.135(1) provides that "[t]he reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances that the actor reasonably believes them to be." In tracing the history of that provision in *State v. Ott*, 297 Or 375, 394, 686 P2d 1001 (1984), the Supreme Court explained that "[t]he juxtaposition of these two requirements for determining the adequacy of the explanation prevents the adequacy from being determined on either wholly objective or subjective grounds." Instead, the

---

[8] Petitioner asserts that the trial court found in his favor on this element; however, that assertion is not supported by the record.

test encompasses consideration of the defendant's situation, including his or her personal characteristics (such as gender, sexual orientation, and physical condition), but excluding his or her "personality characteristics." *Id.* at 395-96.[9] Thus,

> "the jury must determine what was the defendant's situation in the circumstances which the defendant reasonably believed to exist. The jury must then determine whether an ordinary person in that situation and those circumstances would have experienced extreme emotional disturbance."

*Id.* at 398.

Applying that test here, a reasonable trier of fact could have found that petitioner's extreme emotional disturbance was not reasonable. Petitioner's situation was no doubt intensely emotional and upsetting; the victim, with whom he had an intimate, but tumultuous relationship from which he had been unable to extricate himself, was extremely mentally distraught and irrational, pushing him, flicking blood on him, and saying that she wanted to die. Nonetheless, a reasonable factfinder could find that a reasonable person in those circumstances would not have experienced an extreme emotional disturbance—that is, the loss of self-control resulting in homicide. *Id.* at 393. Although that is not the only conclusion that could be drawn from the evidence, it is a permissible one. Thus, even if petitioner's trial counsel were deficient in failing to make an argument that the evidence was legally insufficient to convict him of murder, rather than manslaughter, petitioner has not established that he was prejudiced by that deficiency; he has not established that, as a matter of law, the trial court would have had to acquit him of murder. It follows that the post-conviction court did not err in denying his petition for post-conviction relief on that ground, nor was petitioner entitled to relief on the basis of "cumulative error."

Affirmed.

---

[9] In *Counts*, 311 Or at 628, the court held that insanity (as defined in ORS 161.295) is not to be included in consideration of "the actor's situation" under ORS 163.135 and, in *State v. Wiley*, 317 Or 487, 499, 858 P2d 128 (1993), reaffirmed that "the defendant's 'personality characteristics' or 'personality traits' are not relevant" to the question.