Submitted on remand from the Oregon Supreme Court May 10, 2022, affirmed January 11, petition for review allowed May 4, 2023 (371 Or 60) See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIK JOHN MEISER,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1201547; A166534

524 P3d 130

This case, which involves the requirements for establishing a guilty except for insanity (GEI) defense under ORS 161.295 (2011), *amended by* Or Laws 2017, ch 634, § 3, is on remand from the Oregon Supreme Court. *See State v. Meiser*, 369 Or 347, 506 P3d 402 (2022). The issues presented on remand are (1) the nature of the causal link required between a defendant's qualifying "mental disease or defect" and the defendant's "lack of substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the law," ORS 161.295(1) (2011), and (2) whether the record in this case compels a finding that defendant proved that necessary causal link. *Held*: (1) To be found guilty except for insanity under ORS 161.295, a defendant must prove that, at the time of the criminal conduct in question, the defendant's qualifying mental disease or defect was sufficient on its own to bring about the requisite lack of substantial capacity. (2) The evidence in the record did not compel a finding that, at the time defendant killed the victim, his schizophrenia was sufficient, by itself, to bring about his asserted lack of substantial capacity either to appreciate the criminality of that conduct or to conform his conduct to the law; therefore, the trial court did not err in rejecting defendant's GEI defense.

Affirmed.

On remand from the Oregon Supreme Court, *State v. Meiser*, 369 Or 347, 506 P3d 402 (2022).

Katherine E. Weber, Judge.

Daniel J. Casey argued the cause and filed the briefs for appellant.

Leigh A. Salmon, Assistant Attorney General, argued the cause and filed the brief for respondent. Also on the reply briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

This case, in which the trial court rejected defendant's defense of guilty except for insanity (GEI) and found him guilty of murder, is before us on remand from the Supreme Court. *State v. Meiser*, 308 Or App 570, 481 P3d 375 (2021) (*Meiser I*), *rev'd in part and rem'd*, 369 Or 347, 506 P3d 402 (2022) (*Meiser II*). In *Meiser I*, we concluded that ORS 161.295[1] required defendant to prove that his antisocial personality disorder played no part in bringing about the requisite lack of substantial capacity, and, because the record would allow a reasonable trier of fact to reject defendant's GEI defense on that basis, we affirmed. 308 Or App at 582, 585-86. As explained more fully below, the Supreme Court concluded that the legislature did not intend that meaning of the statute and reversed in part and remanded. *Meiser II*, 369 Or at 360-62. On remand, we once again affirm.

A detailed description of the facts leading up to this case is set out in *Meiser I*, 308 Or App at 572-76, and, to a lesser extent, in *Meiser II*, 369 Or at 350-52, and it is unnecessary for us to repeat that here. As relevant to the issues before us on remand, defendant, who has been diagnosed with schizophrenia and antisocial personality disorder, was convicted of murder, as a lesser-included offense of aggravated murder, for the death of FH during a home invasion robbery.[2] The trial court, acting as factfinder, rejected

---

[1] The GEI defense is set out in ORS 161.295, which, as applicable in this case, provided:

"(1) A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

ORS 161.295 (2011), *amended by* Or Laws 2017, ch 634, § 3. The 2011 version of ORS 161.295 applies in this case and all references to the statute in this opinion are to that version, despite its outdated terminology. *Accord Meiser II*, 369 Or at 349 n 1 (explaining why it is appropriate to reference the 2011 statute).

[2] Defendant was charged with multiple counts of aggravated murder, robbery, and burglary related to the invasion of FH's home; he was also charged with two counts of second-degree burglary for breaking into a martial arts studio and stealing a samurai sword before going to FH's home and for entering the garage of another

defendant's defense of GEI to that charge, and defendant assigned error to that ruling on appeal.[3] *Meiser I*, 308 Or App at 576.

As to that assignment of error, we held that ORS 161.295 required defendant to prove that his asserted lack of substantial capacity either to appreciate the criminality of his conduct in killing FH or to conform his conduct to the requirements of the law was the result of his schizophrenia—a qualifying "mental disease or defect" under ORS 161.295(1)—and that his co-occurring antisocial personality disorder—a "personality disorder" specifically excluded as a "mental disease or defect" under ORS 161.295(2)—played no role in causing the requisite lack of capacity.[4] *Meiser I*, 308 Or App at 585-86. And, because the evidence in the record permitted a finding that defendant's incapacity, in whatever form, was *not* solely the result of his schizophrenia, we concluded that defendant had not established that he was entitled to prevail as a matter of law on the causation element of his defense, and, therefore, the trial court did not err in rejecting the defense.[5] *Id.* As a result, we did not

residence to steal a bicycle to help him escape afterward. Defendant asserted the affirmative defense of GEI to all of the charges. As noted, the trial court found defendant guilty of the lesser-included offense of murder for the death of FH (the court merged the multiple aggravated murder counts into one count of murder); the court also found him guilty of second-degree burglary related to the bicycle. As to the other charges, the court found defendant GEI. *Meiser II*, 369 Or at 350-52.

[3] Defendant did not challenge the court's rejection of his GEI defense with respect to the burglary charge. *Meiser I*, 308 Or App at 576 n 3. He raised other assignments of error, but none of those assignments are still at issue. Specifically, in his second assignment, defendant contended that the trial court erred in failing to provide findings of fact and conclusions of law explaining its murder verdict despite the GEI defense. We held that that assignment of error was not preserved, *Meiser I*, 308 Or App at 591-92, and defendant did not reprise that argument before the Supreme Court, *Meiser II*, 369 Or at 352 n 2. We rejected defendant's third assignment of error, challenging his sentence on the merged convictions for murder, *Meiser I*, 308 Or App at 592-98, and his fourth, contending that the trial court erred in denying his motion in arrest of judgment as to the crime of first-degree robbery, *id.* at 598-601. The Supreme Court declined defendant's petition for review of those holdings; they are therefore undisturbed.

[4] It is undisputed both that defendant's schizophrenia is a "mental disease or defect" for purposes of ORS 161.295 and that his co-occurring antisocial personality disorder is a "personality disorder" within the meaning of the statute. *See Meiser II*, 369 Or at 349 (so noting).

[5] Because GEI is an affirmative defense, defendant bears the burden of proving the defense by a preponderance of the evidence. ORS 161.305 (2011), *amended by* Or Laws 2017, ch 634, § 5; ORS 161.055(2).

resolve the parties' arguments with respect to whether the evidence compelled a finding that defendant lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *Id.* at 587-88.

On review, the Supreme Court concluded that we had erred in our interpretation of the statute, and it reversed in part and remanded.[6] Analyzing the text and legislative history of the GEI defense, the court held that the legislature did not intend to "require that a person who can demonstrate the requisite lack of substantial capacity 'as a result of mental disease or defect' also prove that a co-occurring personality disorder in no part contributed to the incapacity." *Meiser II*, 369 Or at 360-61. That is as far as the court went, however, remanding for our further consideration the issues regarding the "lack of substantial capacity" element that we had left unresolved in *Meiser I*. *Id.* at 361-62. The court also remanded for us to consider whether—given the court's rejection of the "sole cause" test for determining incapacity—the record "compelled a finding that defendant proved that he had experienced any qualifying incapacity 'as a result of mental disease or defect,'" noting that the answer to that question "may turn on whether the phrase 'as a result of' in ORS 161.295(1) means that the qualifying 'mental disease or defect' must be sufficient, on its own, to bring about the requisite incapacity, or whether the legislature intended to require some lesser degree of causal contribution from the qualifying 'mental disease or defect.'" *Id.*

We begin with the latter issue because it is dispositive. In supplemental briefing, defendant contends that the text and context of the statute demonstrate that the legislature intended to require a lesser degree of causal contribution from his schizophrenia (the qualifying "mental disease or defect") than the "sufficient[] on its own" standard

---

[6] The Supreme Court allowed review, limited to the following issue:

"Is the defense of guilty except for insanity as defined in ORS 161.295(1) unavailable when the defendant's lack of substantial capacity to appreciate the criminality of his conduct or to conform that conduct to the requirements of the law is the result of a combination of a 'qualifying mental disorder' and a 'personality disorder'?"

posited as a possibility by the Supreme Court.[7] Further, in defendant's view, we need not decide precisely what lesser degree the legislature had in mind because the record shows that defendant's schizophrenia was, at the least, "the predominant driver"[8] of his behaviors. According to defendant, because there was no "expert evidence or testimony at trial attributing defendant's required lack of substantial capacity to anything other than schizophrenia—or at a minimum, to schizophrenia as 'the predominant driver of his behaviors'" (quoting trial testimony of Dr. Choi), the record compels the conclusion that defendant experienced the requisite incapacity "as a result of mental disease or defect."

The state, on the other hand, urges an "independent sufficiency" standard of causation.[9] According to the state, that standard is suggested by the legislature's use of the term "as a result of" instead of "cause," and it is also necessary to give effect to the policy-based limitation the legislature intended in excluding personality disorders from the term "mental disease or defect." We agree with the state.

Again, the GEI defense provides:

"(1)  A person is guilty except for insanity if, *as a result of* mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2)  As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

_____

[7] Because the parties' statutory construction arguments below and in *Meiser I* focused on the "sole cause" question—and not the degree of causal contribution required from the qualifying mental disease or defect—we requested, and the parties submitted, supplemental briefing on that issue.

[8] The "predominant driver" measure appears to come from the testimony of Dr. Choi, one of defendant's expert witnesses, rather than any legal source.

[9] The state also argues that we need not decide the causal standard question posed by the Supreme Court because, in the state's view, the record permitted a finding that defendant's schizophrenia played *no* causal role in his alleged incapacity, and we have already held as much in *Meiser I*. Like the Supreme Court, we do not understand *Meiser I* "as announcing [that] alternative holding." *See Meiser II*, 369 Or at 354 n 5 (internal quotation marks omitted).

ORS 161.295 (emphasis added). The statute thus requires that "three elements must exist 'at the time of engaging in criminal conduct': 'mental disease or defect'; lack of 'substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law'; and a causal link between the two." *Meiser II*, 369 Or at 354 (quoting ORS 161.295(1)). The issue before us presents a question as to the third element, specifically, the degree of causation required to establish the necessary "causal link" between defendant's schizophrenia—his mental disease or defect—and his asserted lack of substantial capacity.

As a starting point, we know from *Meiser II* that defendant's schizophrenia need not be the "sole" cause— that "as a result of mental disease or defect" as used in ORS 161.295(1) does not mean "*solely* 'as a result of mental disease or defect.'" 369 Or at 359 (emphasis in original); *see also id.* at 355 ("[T]he legislature did not intend to require proof that a personality disorder played no role in bringing about the requisite lack of capacity[.]"); *id.* at 359 (in amending ORS 161.295(2) to exclude personality disorders, the legislature intended "that a person who has 'a personality disorder plus a psychosis *** may still qualify'" for the defense (quoting Tape Recording, House Committee on Judiciary, HB 2075, May 13, 1983, Tape 324, Side A (statement of Jeffrey Rogers) (ellipses in *Meiser II*)). Given that holding in *Meiser II*—and the court's framing of the question before us on remand—we understand the court to suggest that, although the legislature did not intend that a defendant be required to prove the absence of a personality disorder as a potential contributing cause of his lack of substantial capacity, it may nonetheless have intended proof that the qualifying mental disease or defect was sufficient by itself to bring about the incapacity.

Next, we reject defendant's suggestion that "as a result of" means that the defense is available if the qualifying mental disease or defect is simply "one" cause of the defendant's incapacity. If we read ORS 161.295(1) to require only that defendant prove that his mental disease was one cause of his incapacity—no matter how remote or insignificant a cause it might have been—that reading would effectively nullify the exclusions set out in ORS 161.295(2).

The word "cause" when used in a criminal statute generally means "cause-in-fact." *State v. Turnidge (S059155)*, 359 Or 364, 481, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017). And while the word "cause" does not appear in ORS 161.295, it is worth noting that the Supreme Court in *Turnidge* discussed the concept of causation in the context of criminal statutes that "*attach*[ ] liability or responsibility for conduct that causes a result," and not in the context of criminal statutes that permit defendants to *avoid* responsibility for conduct that causes a result. *Id.* (emphasis added). Interpreting ORS 161.295 to make the GEI defense available to defendants when they can establish that a mental disease or defect played some role—or any role—in their capacity to appreciate the criminality of their conduct or to conform their conduct to the law does not hold up under the statutory construction framework established by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).[10]

Here, as the state points out, the legislature used the phrase "as a result of" in ORS 161.205(1), rather than the word "cause," which has an established meaning in Oregon criminal law. *See Turnidge (S059155)*, 359 Or at 470 ("To say that a person 'caused' harm to another expresses, at least for most purposes in the law, the idea that, 'but for' a person's act or conduct, the harm would not have happened[.]"); *id.* at 480-81 (legislature intended phrase "caus[es] the death of another" in criminal homicide statute to mean only cause-in-fact and not to also encompass the concepts of proximate or legal causation). "Ordinarily, when the legislature uses different terms, we assume that the legislature intends those terms to have different meanings. That assumption is particularly warranted when * * * the terms appear together in the same statutory scheme and give rise to different legal consequences."[11] *See Norwood v. Premo*, 287 Or App 443,

_____

[10] In construing a statute, we examine the text of the statute in context, considering any useful legislative history, and, if necessary, applying maxims of statutory construction. *Id.* "[T]he text and context of a statute are the best indications of the legislature's intent." *State v. Stout*, 362 Or 758, 769, 415 P3d 567 (2018) (internal quotation marks omitted).

[11] However, even assuming that the legislature intended "as the result of" in ORS 161.295(1) to carry the same meaning as the word "causes," notwithstanding its use of different terms, *see generally Burrage v. United States*, 571 US 204, 213-14, 134 S Ct 881, 187 L Ed 2d 715 (2014) (noting state court cases that assign

451, 403 P3d 502, *rev den*, 362 Or 300 (2017) (internal citation omitted).

The phrase "as a result of" is not defined for purposes of ORS 161.295(1). We therefore look to its "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). As the Supreme Court noted in *Meiser II*, the noun "result," as relevant here, means "'something that results as a consequence, effect, issue, or conclusion.'" 369 Or at 360 (quoting *Webster's Third New Int'l Dictionary* 1937 (unabridged ed 2002)).[12] That definition references the verb form of the same word, which means "to proceed, spring, or arise as a consequence, effect, or conclusion." *Id.* The preposition "of" here is "used as a function word to indicate the cause, motive, or reason by which a person or thing is actuated or impelled." *Id.* at 1565.

Incorporating those definitions to this context, "as a result of" in ordinary usage suggests that the mental disease or defect must be the *reason* for defendant's lack of substantial capacity or, stated in the reverse, that defendant's lack of substantial capacity must come about as a *consequence, effect, issue, or conclusion* of the mental disease or defect. Examining the plain meaning of those words, in turn, could logically lead to the conclusion that the mental disease or defect must be sufficient, on its own, to bring about the lack of capacity. *See id.* at 1891 ("reason" means "a sufficient ground of explanation or of logical defense; *esp* : a general principle, law, or warranted presumption that supports a conclusion, explains a fact, or validates a course of conduct"); *id.* at 482 (defining "consequence" to mean "something that

---

but-for causation to similar phrases in criminal statutes such as "results in," "because of," and "as a result of"), we still would conclude that it did not intend a strict cause-in-fact view of causation to apply to the GEI defense in question. That is so because, as discussed below, *see* 323 Or App at 684-85, the legislature in ORS 161.295(2) expressly imposed policy-based limitations on the availability of the defense. *See Turnidge (S059155)*, 359 Or at 471 (explaining that legal or proximate cause, in contrast to actual cause, or cause in fact, "expresses a policy judgment as to whether conduct that factually caused harm *should* result in liability or responsibility" (emphasis in original)). In other words, in enacting subsection (2), the legislature significantly narrowed the meaning of "as a result of" and thus the causation analysis to be applied under subsection (1).

[12] The court was making the point there that, "[i]n ordinary usage, the term 'result' is not limited to the concept of sole causation." *Meiser II*, 369 Or at 359-60.

is produced by a cause or follows from a form of necessary connection or from a set of conditions : a natural or necessary result"); *id.* at 724 ("effect" means "power to bring about a result : operative force : INFLUENCE"); *id.* at 1201 (the noun "issue," as relevant, means "final outcome : RESULT, CONSEQUENCE"); *id.* at 471 ("conclusion" in logic means "the necessary consequence of two or more related propositions taken as premises").

Of course, we do not read words in a vacuum. We examine them in context. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.)); *State v. Corcilius*, 294 Or App 20, 23, 430 P3d 169 (2018) ("Thus, when the dispute centers on the meaning of a particular word or words, a dictionary definition—although providing some evidence of meaning—should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute itself." (Internal quotation marks and brackets omitted.)). In this case, that exercise reinforces our understanding that the legislature intended the phrase "as a result of" to mean that the GEI defense would be available only if the qualifying mental disease or defect, standing alone, was sufficient, at the time of the criminal conduct, to bring about the incapacity.

The pertinent causation test—"as a result of mental disease or defect at the time of engaging in criminal conduct"—has been in existence from the time the original insanity defense statute was enacted as part of the Oregon Criminal Code of 1971. *Meiser II*, 369 Or at 356 (citing Or Laws 1971, ch 743, § 36). As the Supreme Court observed in *Tharp v. PSRB*, 338 Or 413, 421, 110 P3d 103 (2005),

> "[t]he 1971 law expressed, in a coherent sequence of specific provisions, the policy that a person is 'not responsible' for criminal conduct if the person engages in criminal conduct but, *because of* a mental disease or defect, lacks the capacity to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."

*Id.* (emphasis added). The commentary to the proposed Oregon Criminal Code explains that subsection (1) of the proposed statute was based on section 4.01(1) of the Model Penal Code, in part, "a modernized rendition" of the *M'Naughten* rule. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 36, 34 (July 1970). That rule provides, in its "classic form," that "'[i]t must be clearly proved that at the time of committing the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or as not to know that what he was doing was wrong.' 8 Eng Rep 718 (1843)." *Id.*

The legislature did not define the terms "mental disease or defect," except to state what is *not* included. *See* ORS 161.295(2); *Beiswenger v. PSRB*, 192 Or App 38, 41, 84 P3d 180, *rev dismissed*, 337 Or 669 (2004). Originally, only "an abnormality manifested only by repeated criminal or otherwise antisocial conduct" was excluded from mental disease or defect. Or Laws 1971, ch 743, § 36. But, in 1983, the legislature amended the statute to also exclude "any abnormality constituting solely a personality disorder." Or Laws 1983, ch 800, § 1. *See Meiser II*, 369 Or at 356 (relying on legislative history of both 1971 and 1983 enactments to determine meaning of "mental disease or defect" in ORS 161.295(1); noting that the court may consider later amendments that were intended by the legislature to modify or otherwise alter the meaning of the original terms of the statute).

The legislative history of the 1983 amendments has been recounted at length in previous cases, and we do not repeat that here. *See Meiser II*, 369 Or at 357-61; *Tharp*, 338 Or at 426-30; *Beiswenger*, 192 Or App at 48-51. For our purposes, it is enough to acknowledge that the oft-repeated history is replete with references to the legislature's intent to narrow the availability of the GEI defense. *See, e.g.*, *Meiser II*, 369 Or at 360 ("That exclusion [for personality disorders]—like the original exclusion—specifies certain mental conditions that are not included within the broader terms 'mental disease or defect,' and in doing so, narrows access to the defense set out in subsection (1)."); *Beiswenger*,

192 Or App at 52 ("Legislators repeatedly expressed concern that criminal defendants not be permitted to avoid criminal responsibility and incarceration merely by asserting that they suffered from some 'mental disease or defect,' as broadly defined."); *id.* ("[B]y narrowly defining 'mental disease or defect,' the legislature intended to make the insanity defense less broadly available to criminal defendants." (Citing, *e.g.*, House Floor Debate, HB 2075, June 16, 1983, Reel 19, Track I (statement of Rep Peter Courtney)).). As then-Representative Courtney explained at the first hearing on the bill in the Senate, the amendment "'would remove personality disorders as a category that could be *relied on* for use of the insanity plea.'" *Beiswenger*, 192 Or App at 50 (quoting Tape Recording, Senate Committee on Judiciary, HB 2075, June 29, 1983, Tape 234, Side A (statement of Rep Peter Courtney (emphasis added))).

Although it does not speak directly to the question before us, we glean from that history that the legislature intended that a qualifying, "mental disease or defect" be the basis—without regard to any excluded condition that the defendant might also have—by which a person may avoid criminal responsibility. The mental disease or defect must, therefore, be sufficient—on its own—to bring about the requisite incapacity. To interpret the statute otherwise would make it possible for a defendant who has both a mental disease and a personality disorder, where the mental disease is not itself sufficient to cause the requisite incapacity, to avoid criminal liability on the basis of the personality disorder, in direct conflict with ORS 161.295(2) and the legislature's express intention.

Based on the text, context, and legislative history of the GEI defense, we conclude that the legislature intended the required causal link between a defendant's "mental disease or defect" and the defendant's "lack of substantial capacity" reflected in ORS 161.295 to be one of "independent sufficiency."

We next must determine whether—applying that standard—the record reflects that defendant established the causation element of his defense as a matter of law. That is, viewing the evidence in the light most favorable to the

state, does the record *compel* a finding that, when he killed FH, defendant's schizophrenia was sufficient, by itself, to bring about the requisite lack of substantial capacity either to appreciate the criminality of that conduct or to conform his conduct to the law? *See Meiser I*, 308 Or App at 572 (setting out that standard of review); *id.* at 578 ("defendant is required to show that the evidence was so compelling that no rational factfinder could have determined that defendant *failed* to establish the affirmative defense of GEI" (emphasis in original)); *Peters v. Belleque*, 241 Or App 701, 712, 250 P3d 456, *rev den*, 350 Or 571 (2011) (to prevail as a matter of law on an affirmative defense, the evidence, viewed in the light most favorable to the state, "must permit only one reasonable conclusion—that [the defendant] established each element of the defense"). We conclude that it does not.

As has been recounted previously, at trial, defendant offered the testimony of four mental health professionals—"a psychologist and three psychiatrists, all of whom opined that defendant was suffering from schizophrenia but recognized that he had a co-occurring diagnosis of antisocial personality disorder."[13] *Meiser II*, 369 Or at 351. The experts explained that schizophrenia is typically evidenced by hallucinations, delusions, and a disordered thought process, whereas antisocial personality disorder is characterized by a disregard for the rights of others "manifested in various ways, by repeated acts of aggression, by repeated acts of criminality, where you're breaking the law, by consistent irresponsibility, not being able to hold a job and so forth."

In arguing that no reasonable factfinder could find *other* than that he proved the causation element of his GEI defense to the murder of FH—*viz.*, that he experienced a qualifying incapacity "as a result of" his schizophrenia—defendant relies on the testimony of psychiatrist Dr. Choi and psychologist Dr. Beaver. Both experts testified that defendant was experiencing command-auditory hallucinations, a hallmark of schizophrenia, on the day of the murder. In opining that defendant lacked the capacity to conform his

---

[13] The state did not offer any expert testimony.

conduct to the requirements of the law, Dr. Beaver testified that, at the time of the murder, defendant was "floridly psychotic." He explained:

> "Part of that psychotic process was not only his overall impaired ability to reason, perceive the world accurately, but was a combination of, one, this driving force that was the motivator for him, that he had to—to engage in certain behaviors in order to save his children and his wife.

> "And, two, that he was[,] related to that, being commanded to do certain things and that to resist would also further endanger his children and wife and that he felt there was no other choice, since his first priority was to protect them."

When asked whether defendant would have committed the crimes if not for his active psychosis, Beaver responded, "I don't believe so." He further testified that, in his opinion, defendant's conduct was not a result of antisocial personality disorder rather than schizophrenia.

Dr. Choi similarly testified to his opinion that defendant lacked substantial capacity to conform his conduct to the requirements of the law. In Choi's opinion, before, during, and after the murder, defendant was "highly psychotic," and, without the psychosis, defendant would not have committed the crimes. In his view, defendant's command auditory hallucinations "were influencing his behaviors" and "giving him a push." Choi said that defendant was "highly agitated and *** much of that agitation had to do with this psychotic, paranoid process he was under."

The record also reflects that defendant was suffering from hallucinations and delusions at the time of his crimes—including that he had been "deleted" from society; that he was being "systematically persecuted by *** a large portion of American society," as well as the police, who would only protect people of a certain class; that he needed a condo to get a "toehold into society" as a property owner so that police would protect him and his family; that his daughter would be turned into a cannibal by the voices he heard; and that his son was being poisoned and would also be harmed by the entities represented by the voices.

That evidence would certainly *permit* a finding that, at the time he engaged in the murder of FH, defendant's asserted lack of substantial capacity either to appreciate the criminality of his acts or to conform his conduct to the law was "the result of" his schizophrenia under the independent sufficiency measure described above—that is, without the need to take into account his co-occurring personality disorder. However, that is not the only finding that could reasonably be derived from this record. Based on the evidence described below, a reasonable factfinder could instead determine that, in the absence of his active antisocial personality disorder, defendant would not be able to establish the requisite incapacity at the time of the murder. In other words, that his schizophrenia, standing alone, was *not* sufficient to cause defendant's asserted lack of capacity to appreciate the criminality of murdering FH or to refrain from doing so.

Choi testified that "most people with schizophrenia are not violent," and that the command auditory hallucinations defendant experienced "weren't definitive and overwhelmingly powerful," but "were present to a moderate degree." Both Choi and Beaver testified that defendant was able to resist or ignore the hallucinations at times, and there was evidence that defendant could put parameters around them—for example, he stated that he would have left if there were children in the home. Defendant's objective when he entered the couple's home was to force an affluent person to wire transfer him $40,000 for a down payment on a condo so that he could get that "toehold into society" and protect his family. He repeatedly stated that he did not intend to hurt anyone during the robbery.

The moments surrounding the murder are significant, given that defendant must establish the requisite causal connection "at the time of engaging in [the] criminal conduct." ORS 161.295(1). Defendant repeatedly said that, when the couple ran from the house screaming, he "panicked." And, as we described in *Meiser I*, when FH looked up at him after falling into the bushes,

"defendant 'knew that *** [he] couldn't get [FH] to respond to [him] and decided that this was going to be the person who [he] victimized in return for [his] victimization.'

> Defendant explained that he 'just lashed out' and thought,
> 'I have been put through too much' and 'I have had enough,'
> as he struck FH four times with the machete."

308 Or App at 575 (ellipses and brackets in original). A reasonable trier of fact could conclude that, at that point, defendant was no longer motivated by his delusions about the need to protect his family from harm, but by anger and revenge against an affluent member of an older generation for his economic position—in other words, that it was his antisocial personality disorder that was affecting his capacity to refrain from killing FH.

Indeed, with respect to defendant "lashing out," Dr. Choi testified that "the psychosis perhaps drove him to that point. But another interpretation could be he just—he was angry and he lashed out? *** [Y]eah, I think both can be true." Choi acknowledged that defendant had reported that "he was very angry" and "that anger was part of his motivation for the acts that he did." Choi opined, "[T]here's a good argument to be made that the anger [defendant] was feeling might partially have been just a normal response to a situation, but very reasonably could have been driven by delusions." When asked directly whether defendant's behavior, "before, during and after the homicide of [FH]," was "driven by antisocial personality disorder or by schizophrenia, by delusions and hallucinations," Choi stated that "both were active." He acknowledged that defendant "did express anger," that he "expressed things that would be consistent with antisocial motivations," but, in Choi's opinion, the psychosis "was more the predominant driver of [defendant's] behaviors." He concluded his testimony stating, "[W]hat I can confidently say is that [defendant] had a whole heck of a lot of delusions that played a major role in the acts he committed, both in the attempt to rob [FH] and ultimately in the homicide that occurred."

However, even accepting Choi's opinion that defendant's schizophrenia "played a major role in" and "was more the predominant driver of" defendant's criminal conduct in killing FH—and that, if not for that psychosis, defendant would not have committed the act—a reasonable trier of fact would not be required to find that defendant's schizophrenia

was *sufficient*—independent of his antisocial personality disorder—to bring about his lack of substantial capacity at the time of the act. Rather, a reasonable person could determine, based on Choi's testimony, together with all the other evidence, that defendant did not establish, by a preponderance of the evidence, that his schizophrenia, by itself, brought about his asserted lack of substantial capacity to appreciate the criminality of killing FH or to conform his conduct to the law by not doing so. In other words, a factfinder could find that defendant's lack of capacity at the time of the homicide was brought about by his active antisocial personality disorder—whose characteristics include "anger, violence, repeated criminality, impulsivity, and a reckless disregard for the safety of others," *Meiser I*, 308 Or App at 584, or, at the least that, in the absence of the personality disorder, defendant's schizophrenia, by itself, would not have led to his incapacity.

To be found guilty except for insanity under ORS 161.295, a defendant must prove that his mental disease or defect was sufficient by itself to bring about his lack of capacity to appreciate the criminality of his conduct or to conform his conduct to the law at the time he engaged in that conduct. The fact that a defendant also has a personality disorder does not foreclose application of the GEI defense so long as the qualifying mental disease or defect is sufficient by itself to bring about defendant's substantial lack of capacity. Applying that standard, on this record, the trial court, as factfinder, was not compelled to conclude that defendant's lack of capacity was brought about by his schizophrenia. The evidence supported a finding that defendant's schizophrenia was not sufficient by itself to have resulted in the requisite incapacity. The trial court did not err, as a matter of law, in rejecting the defense.[14] We therefore affirm.

Affirmed.

---

[14] Given that conclusion, we need not address the remaining questions before us on remand—specifically, whether the record required a finding that defendant lacked substantial capacity either to appreciate the criminality of his act or to conform his conduct to the requirements of law.